IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

IAN DANIEL KOCH,
Green Bay Correctional Institution
P.O. Box 19033
Green Bay, WI 54307

       Plaintiff,

v.                                    Case No. _____

ADVANCED CORRECTIONAL HEALTHCARE,
INC.
3922 Barring Trace
Peoria, IL 61615

       Defendant.

## COMPLAINT

Pursuant to 42 U.S.C. § 1983, Plaintiff Ian Daniel Koch ("Koch"), by his undersigned attorneys, for his Complaint against Defendant Advanced Correctional Healthcare, Inc. ("ACH") alleges as follows:

## **PARTIES**

1. Koch is a state prisoner currently held at Green Bay Correctional Institution in Green Bay, Wisconsin. Prior to his conviction, Koch was a pre-trial detainee at the Fond du Lac County Jail ("Jail") from December 5, 2011, until June 14, 2012.

2. Upon information and belief, ACH is a private company, headquartered in Peoria, Illinois, that provides medical care to prisoners at over 255 correctional facilities across 17 states. At all times relevant to this Complaint, Fond du Lac County had contracted with ACH to provide

health care for inmates at the Jail, including providing the physicians necessary to render those healthcare services.

## ALLEGATIONS

3. Pursuant to its contract with Fond du Lac County, ACH was obligated to assign one physician to serve as the primary medical professional responsible for treating inmates at the Jail, as well as a list of other physicians who were on call to provide medical care in the event the primary physician was unavailable.

4. At all times relevant to this Complaint, Dr. Karen Butler ("Dr. Butler") was the ACH physician assigned to the Jail.

5. In accordance with ACH policy, Dr. Butler was only physically present at the Jail once per week.

6. In accordance with ACH policy, Dr. Butler was scheduled to be physically present at five other correctional facilities across the state during the remainder of the week, including facilities in Green, Jefferson, Kenosha, Rock, and Sheboygan Counties in Wisconsin.

7. The distance between these other ACH correctional facilities, as well as the distance to Dr. Butler's home, required significant travel time for Dr. Butler.

8. In accordance with ACH policy, on the days of the week Dr. Butler was not physically present at the Jail, Dr. Butler was required to diagnose inmates over the telephone, communicating with Jail nurses and corrections staff regarding inmates' medical conditions.

9. In accordance with ACH policy, Dr. Butler did not take notes and did not have access to inmates' medical files when she communicated with Jail staff during these telephone calls.

10. Upon information and belief, Jail nurses and corrections staff did not follow a written policy on when to contact Dr. Butler, but rather, did so on a case-by-case basis.

11. In accordance with ACH policy, Jail nursing staff decided whether inmates would be seen by Dr. Butler, and inmates were not permitted to see Dr. Butler without Jail nursing staff's permission.

12. On or about January 20, 2012, Koch first experienced abdominal pain while performing "swamping" work. Koch promptly reported his pain and medical need to Jail nursing staff.

13. On or about February 17, 2012, Koch again reported abdominal pain to Jail nursing staff.

14. On or about February 23, 2012, Koch again reported abdominal pain to Jail nursing staff, and he asked to be taken to the hospital because his condition had persisted. Neither the Jail nursing staff nor any other Jail staff member, however, arranged to have Koch treated at the hospital.

15. On or about February 23, 2012, Koch filed a grievance in which he complained that he was suffering from extreme pain, and again requested to be taken to the hospital. Koch's request was denied in writing on or about March 8, 2012.

16. On or about March 2, 2012, Koch again reported abdominal pain to Jail nursing staff, and test results revealed blood in Koch's urine. Although aware of Koch's serious medical need, neither the Jail nursing staff nor any other Jail staff member arranged to send Koch to the hospital.

17. On or about March 5, 2012, Koch again reported abdominal pain to Jail nursing staff. Neither the Jail nursing staff nor any other Jail staff member, however, arranged to have Koch treated at the hospital.

18. On or about March 7, 2012, after Koch had endured weeks of severe abdominal pain, Jail nursing staff finally consulted an outside urologist. The urologist advised Jail staff that Koch should be taken to the emergency room if he experienced increased pain, vomiting, or developed a fever. The urologist further recommended a CT scan to determine the cause of Koch's pain. ACH physician, Dr. Butler, was aware of the urologist's recommendation. Although aware of Koch's serious medical need, neither Dr. Butler nor any other Jail staff member arranged to send Koch to the hospital.

19. On or about the afternoon of March 7, 2012, and continuing into the morning of March 8, 2012, Koch experienced severe abdominal pain, had difficulty breathing, and vomited more than a dozen times. Jail staff were aware of Koch's pain and vomiting and reported that Koch had vomited on the floor, and was experiencing what he described as the "worst pain of his life."

20. Further, corrections staff saw Koch lying in pain in the fetal position on the floor of his cell, along with his own vomit. Corrections staff communicated this information to ACH physician, Dr. Butler, and documented the events for the Jail nursing staff to review. Despite being aware of Koch's serious medical need, neither Dr. Butler nor any other Jail staff member arranged to send Koch to the hospital.

21. Later on March 8, 2012, Jail staff forced Koch to clean up his own vomit before he was fingerprinted.

22.     Throughout the day of March 8, 2012, corrections staff alerted Jail nursing staff about Koch's condition, and they contacted ACH physician Dr. Butler several times. Koch also, once again, reported his severe abdominal pain to the Jail nursing staff, and again asked to be taken to the hospital. Although aware of Koch's serious medical need, however, neither Dr. Butler nor any other Jail staff member arranged to send Koch to the hospital.

23.     On or about March 9, 2012, Koch finally received a CT scan at St. Agnes Hospital. Koch was transported back to the Jail before the results of the scan were available, and he was returned back to his cell to await the results. The scan confirmed that Koch had appendicitis requiring immediate surgery. Only after a radiologist informed her about Koch's appendicitis, did Dr. Butler finally order Koch to be surgically treated at the hospital.

24.     Acting in accordance with ACH policy, Dr. Butler did not see Koch in person or diagnose his abdominal pain at any point between January 20, 2012 and March 9, 2012.

25.     Dr. Butler was aware of Koch's serious medical needs. Despite this knowledge and in accordance with ACH policy, Dr. Butler failed to recommend or order that Koch be taken to the emergency room before March 9, 2012. Dr. Butler was present at the Jail on or about March 8, 2012, and she reviewed Koch's medical records, but nonetheless refused to arrange for Koch to be treated at the hospital.

26.     On two separate occasions during February and March 2012, Dr. Butler prescribed Koch a 72-hour liquid diet as an attempt to treat his severe abdominal pain, even though the first liquid diet did not improve his condition. During both of these liquid diets, Koch felt like he was starving when he was deprived of solid food.

5

4852-5992-9152.1

Case 2:17-cv-00127-NJ    Filed 01/27/17    Page 5 of 8    Document 1

27. Dr. Butler later placed Koch on a clear liquid diet on May 2, 2012 to address his complaints of tooth pain, but this did not improve his pain. It is unclear how a liquid diet would improve tooth pain.

28. Koch suspects that ACH policy mandates prescription of a liquid diet as a way to punish inmates for requesting medical attention.

29. Appendicitis is a serious medical condition, and the failure of Jail medical staff to recommend or order that Koch be taken to the emergency room before March, 9, 2012, constituted deliberate indifference to Koch's serious medical need.

30. By acting in accordance with ACH policy, the Jail medical staff ignored Koch's serious medical condition and Koch needlessly endured agonizing pain in the weeks leading up to March 9, 2012.

## CAUSE OF ACTION

**Deliberate Indifference to Medical Need in Violation of the Fourteenth Amendment**

31. Koch incorporates by reference paragraphs 1-30 of this Complaint as if fully set forth herein.

32. At all times relevant to this action, Koch was suffering from acute appendicitis, an objectively serious medical condition.

33. From January 23, 2012 until March 9, 2012, Dr. Butler was regularly apprised of Koch's deteriorating health, including his increasing pain and vomiting. Dr. Butler was thus aware of Koch's serious medical condition and of the substantial risk of harm that could result from his condition.

34. In the face of this knowledge, however, and acting in accordance with ACH policy, Dr. Butler did not take reasonable steps to address Koch's condition and thus consciously disregarded the risk of harm to Koch.

35. Dr. Butler and the Jail nurses demonstrated a pattern of behavior that supports an inference of a custom, policy or practice by ACH of deliberate indifference to Koch's serious medical need.

36. As a result of this deliberate indifference to Koch's serious medical need, Koch was subjected to needless pain and suffering, and he was put in fear of serious injury and death.

37. Because ACH was responsible for Koch's medical care while he was a pre-trial detainee, its deliberately indifferent conduct occurred under the color of law.

38. ACH thus violated Koch's right to Due Process as protected by the Fourteenth Amendment to the United States Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Koch respectfully requests relief as follows:

1. A judgment against ACH finding that it violated Koch's rights under the Fourteenth Amendment to the United States Constitution;

2. Damages for Koch's pain, suffering, and emotional distress resulting from ACH's deliberate indifference to his serious medical need;

3. An award of the costs and attorneys' fees incurred in this action, pursuant to 42 U.S.C. §§ 1988 and 1920.

4. Such further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues triable to a jury.

Dated: January 27, 2017

                                                    *s/ Nathan D. Imfeld*
                                                    Trent M. Johnson (WBN 1056289)

Scott T. Allen (WBN 1044354)
Nathan D. Imfeld (WBN 1092932)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202
(414) 319-7303 (TMJ)
(414) 319-7172  (STA)
(414) 319-7174  (NDI)
(414) 297-4900  Facsimile
tjohnson@foley.com
sallen@foley.com
nimfeld@foley.com
*Attorneys for Plaintiff Ian Daniel Koch*